UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cimline, Inc.,

                  Plaintiff,

                                    Civ. No. 07-3997 (RHK/JSM)
                                    **MEMORANDUM OPINION**
                                    **AND ORDER**

v.

Crafco, Inc.,

                  Defendant.

---

Paul R. Smith, Lauris A. Heyerdahl, Abrams & Smith, P.A., Minneapolis, Minnesota, for Plaintiff.

Eric H. Chadwick, Casey A. Kniser, Scott G. Ulbrich, Patterson, Thuente, Skaar & Christensen, P.A., Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

In this action, Plaintiff Cimline, Inc. ("Cimline") seeks a declaration that a patent held by Defendant Crafco, Inc. ("Crafco") is invalid or, alternatively, that a product manufactured by Cimline does not infringe that patent. Cimline also alleges that Crafco has engaged in unfair competition and violated the antitrust laws. Currently before the Court is Crafco's Amended Motion to Dismiss.[1] For the reasons set forth below, Crafco's Motion will be granted in part and denied in part.

## BACKGROUND

---

[1] Crafco filed a Motion to Dismiss (Doc. No. 3) on October 9, 2007, and filed an Amended Motion to Dismiss (Doc. No. 6) on November 2, 2007.

Cimline is a Minnesota corporation with its principal place of business in Plymouth, Minnesota. (Compl. ¶ 1.) It manufactures commercial pavement maintenance equipment, including "melters," which are mounted on trailers and which "heat and thereby melt blocks of sealant materials in a reservoir tank (of various sizes but usually 200 gallons or so). The melted material is then dispensed from the equipment's tank via a pipe or hose and used to seal cracks in pavement or otherwise maintain the integrity of paved surfaces." (Id. ¶¶ 1, 9.)

Crafco is an Arizona corporation with its principal place of business in Chandler, Arizona. (Id. ¶ 2.) Crafco also manufactures commercial pavement maintenance equipment, including melters. (Id. ¶¶ 2, 9.) Crafco holds patent # 5,967,375 (the "'375 patent") entitled "Sealant Melter with Retrofittable Sealant Block Feed Assembly." (Id. ¶ 10.) The '375 patent "incorporat[es] a sealant block feed assembly (sometimes referred to as an 'autoloader') utilized to feed blocks of sealant into the Melter and which [is] retrofittable." (Id. ¶ 11.) Cimline asserts that Crafco failed to disclose to the United States Patent and Trademark Office that it was not the true inventor of a melter utilizing a retrofittable sealant-block autoloader. (Id. ¶¶ 11-18.)

According to the Complaint, Cimline has now manufactured a melter with a retrofittable autoloader whose "delivery into the marketplace is imminent." (Id. ¶ 28.) It alleges that because Crafco has previously asserted that Cimline's products infringe the '375 patent, it has a reasonable apprehension that Crafco will sue it for patent infringement when Cimline's new product enters the market. (Id. ¶¶ 20, 29.) As a result, Cimline

commenced the instant action, seeking a declaration that the '375 patent is invalid (Count I) or, in the alternative, its new product does not infringe the '375 patent (Count III). Cimline also alleges that Crafco has engaged in unfair competition (Count II) and has attempted to "monopolize and dominate th[e] market" in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.* (Count IV), by utilizing its "invalid" patent. Crafco now moves to dismiss all of Cimline's claims, arguing that (1) the Court lacks subject-matter jurisdiction over the declaratory-judgment claims (Counts I and III), (2) Cimline has failed to adequately plead its antitrust claim (Count IV), and (3) the unfair-competition claim (Count II) is repetitive of the antitrust claim.

## CHOICE OF LAW

Before discussing the appropriate standard of review, the Court must first analyze a choice-of-law issue that was not addressed by the parties. Ordinarily, this Court applies decisions of the United States Court of Appeals for the Eighth Circuit, in which appeals from this Court normally lie. However, because at least some of Cimline's claims are predicated on the patent laws, an appeal in this matter would lie in the United States Court of Appeals for the Federal Circuit. See 28 U.S.C. § 1295(a)(1); Ventrassist Pty Ltd. v. Heartware, Inc., 377 F. Supp. 2d 1278, 1282 (S.D. Fla. 2005). Accordingly, the Court must apply the same law that the Federal Circuit would apply in this case. See Am. Household Prods., Inc. v. Evans Mfg., Inc., 139 F. Supp. 2d 1235, 1239 (N.D. Ala. 2001); Mi-Jack Prods., Inc. v. Taylor Group, Inc., No. 96 C 7850, 1997 WL 441796, at *2 (N.D. Ill. July 30, 1997). "[T]he Federal Circuit generally follows its own law on substantive patent law

questions, [while] it defers to the decisions of the regional circuit in which the district court sits on procedural questions 'that involve no special issues relating to patent law.'" Heartware, 377 F. Supp. 2d at 1282-83 (quoting Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 856 F.2d 173, 175 (Fed. Cir. 1988)); accord Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1380-81 (Fed. Cir. 2002).

Here, Crafco attacks Counts I and III for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and Counts II and IV for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). These raise purely procedural issues; the Federal Circuit applies regional-circuit law when reviewing dismissals under either Rule. See, e.g., Mitutoyo Corp. v. Cent. Purchasing, LLC, 499 F.3d 1284, 1290 (Fed. Cir. 2007) (noting that dismissal under Rule 12(b)(6) is reviewed under regional-circuit law); Toxgon, 312 F.3d at 1380 ("We review a dismissal for lack of subject matter jurisdiction according to regional circuit law, since it is a procedural question not unique to patent law."). Accordingly, Eighth-Circuit law governs the standards to apply to Crafco's Motion.

**STANDARD OF REVIEW**

With respect to Crafco's arguments *vis-a-vis* Counts II and IV, which have been challenged under Rule 12(b)(6), Bell Atlantic Co. v. Twombly sets forth the controlling standard: to avoid dismissal, Cimline's complaint must include "enough facts" that Counts II and IV are "plausible on [their] face." __ U.S. __, 127 S. Ct. 1955, 1974 (2007). While Rule 8 of the Federal Rules of Civil Procedure does not require the pleading of "detailed factual allegations," Cimline nevertheless must plead sufficient facts "to provide the 'grounds' of [its] 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted). Cimline cannot simply "le[ave] open the possibility that [it] might . . . establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted). Rather, the facts set forth in the Complaint must be sufficient to "nudge" the claims in Counts II and IV "across the line from conceivable to plausible." Id. at 1974. When deciding whether Counts II and IV are sufficiently pleaded, however, the Court must liberally construe the allegations in the Complaint, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in Cimline's favor. Id. at 1964-65. Moreover, Counts II and IV cannot be dismissed "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted).

As for Crafco's arguments with respect to Counts I and III, which have been challenged under Rule 12(b)(1), the Court notes that there are two types of subject-matter-jurisdiction challenges under that Rule: "facial" attacks and "factual" attacks. See, e.g.,

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Hastings v. Wilson, Civ. No. 05-2566, 2007 WL 333617, at *3 (D. Minn. Feb. 1, 2007) (Kyle, J.). A facial attack, as its name suggests, challenges subject-matter jurisdiction based solely on the allegations appearing on the face of the complaint. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In ruling on such a motion, a court must afford the non-moving party the same protections it would be entitled to under Rule 12(b)(6). Id. By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject-matter jurisdiction exists; a court may rely upon matters outside the pleadings when considering such an attack, and the non-moving party does not receive the benefit of Rule 12(b)(6)'s safeguards. Id. The burden of establishing the existence of subject-matter jurisdiction rests with Cimline. E.g., Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006).

Although neither party has addressed this issue in its moving papers, it appears that Crafco has mounted only a facial attack to subject-matter jurisdiction here. Indeed, it has not submitted Affidavits or other documents in support of its Motion, and it does not argue any facts in its Motion papers beyond the pleadings. Accordingly, the standard utilized when reviewing a motion under Rule 12(b)(6) (discussed above) applies to Crafco's subject-matter-jurisdiction challenge to Counts I and III.

### ANALYSIS

**I.    Subject-matter jurisdiction (declaratory-judgment claims)**

Crafco first argues that the Court lacks subject-matter jurisdiction over Count I (declaration of patent invalidity) and Count III (declaration of non-infringement) because

-6-

Cimline has not alleged in the Complaint "that Crafco has accused [its new] product of infringement." (Def. Mem. at 2.) While the Complaint alleges that Crafco has accused Cimline of infringement *in the past*, Crafco argues that the absence of such an accusation with respect to Cimline's *new* product means that there exists no "case or controversy" sufficient to confer the Court with subject-matter jurisdiction over the declaratory-judgment claims. (Id.)[2] The Court does not agree.

The starting point for analyzing Crafco's argument must be the Declaratory Judgment Act, which states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[3] Prior to this year, courts used a two-pronged test to determine whether an "actual controversy" existed in patent declaratory-judgment actions. See Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1283 (Fed. Cir. 2007). In order to establish such a controversy under that test, the plaintiff was required to

---

[2] Paragraph 20 of the Complaint states that "Crafco has asserted that Cimline has infringed upon patent '375." That allegation, on its face, could be read to suggest that Crafco has asserted that Cimline's *new* product infringes the '375 patent. The parties' Motion papers make clear, however, that Crafco has accused Cimline of infringement only in the past, and with respect to different products. (See Mem. in Opp'n at 2 ("Crafco has in the past directly threatened Cimline with infringement of [the '375] patent."); id. at 5 (noting that Crafco has "previously sued Cimline for infringement, albeit not in relation to an autoloader.").)

[3] An "actual controversy" under the Declaratory Judgment Act is the same as a "case" or "controversy" justiciable in federal court under Article III of the United States Constitution. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937). In other words, Crafco's assertion that no case or controversy exists here is tantamount to arguing that there is no "actual controversy" between the parties under the Declaratory Judgment Act.

show that (1) it had actually produced or was prepared to produce an allegedly infringing product and (2) the patent holder had engaged in conduct that created a "reasonable apprehension" on the part of the declaratory-judgment plaintiff that it would be sued for infringement if it continued in its allegedly infringing activity.  Id.

Earlier this year, however, the Supreme Court rejected the "reasonable apprehension" test in favor of a test focusing on the "totality of the circumstances." MedImmune, Inc. v. Genentech, Inc., __ U.S. __, 127 S. Ct. 764, 771, 774 n.11 (2007). The issue now is not whether the declaratory-judgment plaintiff has a "reasonable apprehension" of being sued, but rather "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 127 S. Ct. at 771.  For that question to be answered in the affirmative, the dispute between the parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and must further be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id.

The practical effect of MedImmune was to "lower[] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute." Frederick Goldman, Inc. v. West, No. 06 Civ. 3413, 2007 WL 1989291, at *3 (S.D.N.Y. July 6, 2007).  As a result, the vast majority of courts called upon to address subject-matter jurisdiction in patent declaratory-judgment

cases post-MedImmune have found jurisdiction to exist,[4] and the Court reaches the same conclusion here.

According to the Complaint, Crafco has previously accused Cimline of patent infringement. (See Compl. ¶ 20.) Indeed, Crafco sued Cimline in the United States District Court for the District of Arizona, alleging that Cimline had infringed the same patent at issue here. (Mem. in Opp'n at 5 & n.1.)[5] Cimline also asserts in the Complaint that Crafco has "previously alleged patent infringement for every prior Cimline attempt to market and sell a melter with autoloader." (Compl. ¶ 29.) In the Court's view, these facts are sufficient to establish an "actual controversy" over the declaratory-judgment claims. As the Federal Circuit has noted, "related litigation involving the same technology and the same parties" weighs heavily in favor of the existence of subject-matter jurisdiction. Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1344-45 (Fed. Cir. 2007). The existence of such litigation here, as well as the other previous accusations of infringement, establish that Crafco has "engaged in a course of conduct that shows a preparedness and a willingness to enforce its patent rights." SanDisk Corp. v.

---

[4] See, e.g., Sabert Corp. v. Waddington N. Am., Inc., Civ. A. No. 06-5423, 2007 WL 2705157 (D.N.J. Sept. 14, 2007); Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., No. C 07-2363, 2007 WL 2318924 (N.D. Cal. Aug. 13, 2007); Thomson Instrument Co. v. Biotage AB, No. 06cv2305, 2007 WL 1989626 (S.D. Cal. July 3, 2007); Cingular Wireless LLC v. Freedom Wireless, Inc., No. CV06-1935, 2007 WL 1876377 (D. Ariz. June 27, 2007); Judkins v. HT Window Fashions Corp., 514 F. Supp. 2d 753 (W.D. Pa. 2007); Crutchfield New Media, LLC v. Charles E. Hill & Assocs., Inc., No. 1:06-cv-0837, 2007 WL 1320750 (S.D. Ind. May 4, 2007); but see Bridgelux, Inc. v. Cree, Inc., No. C 06-6495, 2007 WL 2022024 (N.D. Cal. July 9, 2007).

[5] Although the Complaint does not expressly mention the Arizona litigation, the Court may take judicial notice of that proceeding. See Fed. R. Evid. 201(b).

STMicroelectronics, Inc., 480 F.3d 1372, 1383 (Fed. Cir. 2007). That is enough, under MedImmune, to establish subject-matter jurisdiction over Counts I and III. Id.

Crafco bases its argument on its failure to accuse Cimline's new product of infringement, but that fact "is not dispositive to determining whether an actual controversy exists." Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., No. C 07-2363, 2007 WL 2318924, at *3 (N.D. Cal. Aug. 13, 2007); see also SanDisk, 480 F.3d at 1383 (defendant's "direct and unequivocal" statements that it had "absolutely no plan whatsoever to sue" plaintiff insufficient to defeat subject-matter jurisdiction in patent declaratory-judgment action). Instead, the Court believes that Crafco's prior steps to enforce the '375 patent demonstrate that Cimline, quite reasonably, is more than a "nervous . . . possible infringer," even if Crafco is not currently "poised on the courthouse steps" to sue Cimline for infringement. Cingular Wireless LLC v. Freedom Wireless, Inc., No. CV06-1935, 2007 WL 1876377, at *3 (D. Ariz. June 27, 2007) (quoting Vanguard Research, Inc. v. PEAT, Inc., 304 F.3d 1249, 1254-55 (Fed. Cir. 2002)). At bottom, Cimline is in the uncomfortable position of either abandoning its new product or running the risk of being sued for infringement, which is precisely the type of situation that the Declaratory Judgment Act was intended to remedy. MedImmune, 127 S. Ct. at 773 (noting that "putting the challenger to the choice between abandoning his rights or risking prosecution is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate'") (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 152 (1967)); accord SanDisk, 480 F.3d at

1382 (a party "need not 'bet the farm,' so to speak, and risk a suit for infringement by . . . continuing in [its planned] activity before seeking a declaration of its legal rights").

Accordingly, Crafco's Motion will be denied with respect to Counts I and III.[6]

## II.   Count IV (Sherman-Act claim)

Crafco next argues that Count IV, the Sherman-Act claim, is defective because Cimline has failed to plead (1) the "relevant market" for its new product and (2) facts establishing that Crafco enjoys monopoly power in that market. (Def. Mem. at 3-6.) Crafco is correct that Cimline must define the relevant market in its Complaint and plead facts sufficient to establish monopoly power in that market to state a valid claim under Section 2 of the Sherman Act. See Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 560 (8th Cir. 1998). In the Court's view, Cimline has done neither.

In order for its claim to stand, Cimline must "describ[e] a well-defined relevant market, both geographically and by product." Foam Supplies, Inc. v. Dow Chem. Co., No. 4:05CV1772, 2007 WL 4210354, at *4 (E.D. Mo. Nov. 27, 2007). Proper pleading of the product market and the geographic market is critical, because monopolization claims "often rise or fall on the definition of the relevant market." Double D, 136 F.3d at 560. Cimline

---

[6] Crafco also argues that because Cimline has not identified the new product that Cimline intends to bring to the market, it cannot form a response to Count III. (Def. Mem. at 2-3.) Accordingly, it asks the Court to order Cimline to file a more definite statement of that claim, pursuant to Federal Rule of Civil Procedure 12(e). That request is **DENIED**. To the extent that Crafco is unable to frame a response to Cimline's allegation of non-infringement, it may so plead in its Answer. See Fed. R. Civ. P. 8(b)(5) (party lacking knowledge or information sufficient to form a belief of truth of allegation in complaint "must so state" in its answer). And, Crafco can learn during discovery what product is at the heart of Cimline's claims.

argues that it has pleaded the product market in paragraphs 1 and 2 of the Complaint, in which it alleges that it and Crafco are "manufacturer[s] of commercial pavement maintenance equipment." (Mem. in Opp'n at 7.) These allegations do nothing more than provide a general description of the parties' business; they do not define a product market for purposes of an antitrust claim.[7] Similarly deficient is Cimline's pleading with respect to the geographic market; indeed, there are no allegations whatsoever in the Complaint concerning "the market area in which [Crafco] operates." Double D, 136 F.3d at 560. Because it is incumbent upon an antitrust plaintiff to define the precise boundaries of the relevant market both by product and by geography, see id., Count IV, as pleaded, fails to pass muster.

Cimline also has failed to plead facts sufficient to establish that Crafco enjoys monopoly power in the relevant market; indeed, it has conceded this point by failing to address it in its Opposition. Cimline's lone allegation about Crafco's market power – that Crafco has "a sufficient share" of the relevant market (Compl. ¶ 36) – is simply a label, and a "label . . . will not do." Twombly, 127 S. Ct. at 1964. Instead, Cimline must plead *facts* indicating that Crafco's share of the market is sufficiently high to constitute monopoly

---

[7] For example, as a manufacturer of "commercial pavement maintenance equipment," Crafco allegedly could be monopolizing the maintenance-equipment market, the pavement-equipment market, the pavement maintenance-equipment market, or any of a number of other markets; it has nowhere alleged which of these product markets is purportedly being monopolized by Crafco. Creating further confusion, and contrary to its assertion that the relevant product market is "commercial pavement maintenance equipment," Cimline has also asserted that the relevant product market consists of "melters with retrofittable autoloaders." (Mem. in Opp'n at 7 (citing Compl. ¶¶ 17, 29).)

power.  See City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 279 (8th Cir. 1988) (noting that ninety percent market share is sufficient to constitute monopoly, while thirty-three percent is not enough and sixty to sixty-four percent is "doubtful").  Its failure to have done so renders Count IV defective.

Accordingly, the Court will dismiss Count IV, without prejudice and with leave to re-plead.

**III.    Count II (Unfair-competition claim)**

Finally, Crafco argues that the unfair-competition claim (Count II) must be dismissed because it is indistinct from the antitrust claim (Count IV).  The Court agrees.  As Cimline recognizes in its Opposition brief, unfair competition under Minnesota law "is not a tort with specific elements, but rather, it describes a general category of torts which courts recognize for the protection of commercial interests."  (Mem. in Opp'n at 4 (citing LensCrafters, Inc. v. Vision World, Inc., 943 F. Supp. 1481, 1490 (D. Minn. 1996)).)  A plaintiff must identify in its complaint the underlying tort on which it bases an unfair-competition claim, but if that tort is pleaded elsewhere in the complaint, the unfair-competition claim is duplicative and is subject to dismissal.  See, e.g., Guy Carpenter & Co., Inc. v. John B. Collins & Assocs., Inc., Civ. No. 05-1623, 2006 WL 2502232, at *9 (D. Minn. Aug. 29, 2006); Goddard, Inc. v. Henry's Foods, Inc., 291 F. Supp. 2d 1021, 1034 (D. Minn. 2003); LensCrafters, 943 F. Supp. at 1490.  Here, the only tortious conduct identified in the Complaint as underlying the unfair-competition claim is Crafco's alleged "misuse" of its patent, in an alleged attempt to drive out competition and monopolize the

market.  (See Compl. ¶ 25.)  The unfair-competition claim, therefore, is duplicative of the antitrust claim and will be dismissed.[8]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Amended Motion to Dismiss (Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  The Motion is **DENIED** with respect to Counts I and III; and

2.  The Motion is **GRANTED** with respect to Counts II and IV, and those claims are **DISMISSED WITHOUT PREJUDICE**.  Cimline may re-plead these claims by filing an Amended Complaint correcting the deficiencies outlined above within 15 days of the date of this Order.[9]

Dated: December  28 , 2007                    s/Richard H. Kyle
                                              RICHARD H. KYLE
                                              United States District Judge

---

[8] The Court will dismiss this claim without prejudice and with leave to re-plead.

[9] Any claims asserted in an Amended Complaint must be "warranted by existing law" and any factual contentions therein must either have evidentiary support or be likely to have such support after discovery.  Fed. R. Civ. P. 11(b)(2), (4).